**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael BYNUM, Defendant–Appellant.**

**No. 03–10231.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2004.

Filed March 26, 2004.

with having violated any statute other than 18 U.S.C. § 1001.

Robert G. Lucherini, Norman J. Reed, Las Vegas, NV, for the defendant-appellant.

Darin M. LaHood, Ray Gattinella, Assistant United States Attorney, Las Vegas, NV, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, TALLMAN, and CALLAHAN, Circuit Judges.

TALLMAN, Circuit Judge:

Michael Bynum appeals his conviction and 77 month sentence following a conditional guilty plea to one count of being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Bynum contends that the district court erred by denying his motion to suppress the pistol and the semi-automatic shotgun that North Las Vegas Police Department ("NLVPD") officers discovered in his apartment during the execution of a search warrant. Bynum first asserts that NLVPD officers failed to comply with the "knock and announce" requirement when executing the search warrant. Second, he contends that the seizure of the firearms was unlawful under the "plain view" doctrine. However, because the record establishes the existence of exigent circumstances threatening officer safety, the officers' no-knock entry violated neither the Fourth Amendment nor 18 U.S.C. § 3109. We lack jurisdiction to reach the merits of Bynum's "plain view" argument because he did not properly raise the issue before the district court nor preserve it in his plea agreement. We affirm.

I

A confidential informant ("CI") who had previously provided law enforcement with reliable information told NLVPD officers that narcotics, specifically crack cocaine, could be purchased from an individual residing at a particular apartment in North Las Vegas. Officers determined that the resident was Michael Bynum. The informant, while under police surveillance, conducted two controlled buys from Bynum's apartment. First, on January 22, 2002,

the CI purchased rock cocaine in a face-to-face transaction. The CI provided a detailed description of Bynum and informed the police that Bynum had removed a handgun from his pocket during the sale. The second buy occurred on February 4, 2002. The CI purchased rock cocaine from an unidentified female in Bynum's apartment. While she was retrieving the drugs from a bedroom, the CI heard her speak with an unseen male.[1] The drugs obtained from both transactions were turned over to NLVPD and tested positively for cocaine.

On February 26, 2002, the officer responsible for this investigation, Detective Alexander Perez, instructed Detective Donald Pearson to conduct an undercover buy from Bynum's apartment. At approximately 3:00 p.m., Detective Pearson carried out the transaction while another officer waited nearby. Detective Pearson knocked on the back door of Bynum's apartment and identified himself as "Big Man." Bynum answered the door wearing no clothing except white tube socks and holding a chambered semi-automatic pistol at his side. Detective Pearson asked to purchase rock cocaine and Bynum retreated into the apartment out of sight. He returned moments later wearing red undershorts while still armed with the loaded pistol. Bynum then hesitated and asked a female also present in the apartment, "You seen him here before?" She assured Bynum that she had.[2] Bynum and Detective Pearson then completed the sale. As Detective Pearson turned and left, Bynum followed with the pistol still in his hand, apparently surveying the area for evidence of surveillance. Detective

---

1. Bynum does not contest the inference that he was the unseen male in the bedroom of his apartment during the second drug sale.

2. Detective Pearson testified at the suppression hearing that he had never visited Bynum's residence on any prior occasion. However, he had conducted similar undercover work at the same apartment complex.

Pearson drove directly to the NLVPD station to test the contraband, which reacted positively for cocaine.

Based on the evidence gathered from these three buys—two by the CI and one by undercover Detective Pearson—Detective Perez then sought and was granted a Nevada state warrant authorizing a nighttime search of Bynum's apartment.[3]

Given the apartment's location in a high crime area and the fact that Bynum was armed and had exhibited unusually paranoid behavior during the day's earlier undercover buy, NLVPD officers considered the execution of this search warrant to be high-risk.

At approximately 10:00 p.m., less than seven hours after Detective Pearson's undercover buy, six police officers executed the search warrant. Officers detonated two Omniblast devices[4] outside a window before employing a battering-ram to breach the door and gain entry into Bynum's apartment. The officers did not knock on Bynum's door, and they announced "Police, search warrant" only after commencing their forcible entry of the residence. Officers deployed two more Omniblast devices as they swept through the apartment. Officer Perez estimated that between 10 to 15 seconds elapsed before officers found Bynum in the bedroom along with the same woman who had been present in the apartment that afternoon.

During the subsequent search of the apartment for drugs and drug paraphernalia, NLVPD officers found the marked money from the undercover buy. Officers also seized a hand-gun found tucked behind the cushion of Bynum's living room couch and a loaded semi-automatic shotgun from the hallway closet.

Bynum was charged with being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He filed a written motion to suppress the two firearms discovered during the search of his apartment, solely on the grounds that the officers' failure to knock and announce prior to entry violated his Fourth Amendment and state and federal statutory rights. On November 4, 2002, after an evidentiary hearing, the district court denied Bynum's motion, finding that officers had a reasonable suspicion that knocking and announcing would endanger themselves and civilian bystanders based on Bynum's exhibition of weapons during two of three drug buys. The district court found that exigent circumstances justified noncompliance with the knock and announce requirement. Shortly thereafter, Bynum entered a conditional guilty plea that reserved the right to appeal the district court's denial of his motion to suppress.

## II

We review de novo the district court's denial of Bynum's motion to suppress the incriminating evidence. *See United States v. Garcia*, 205 F.3d 1182, 1186 (9th Cir.2000). Factual findings underlying the denial of the motion are reviewed for clear error. *See United States v. Fernandez–Castillo*, 324 F.3d 1114, 1117 (9th Cir.2003). Whether exigent circumstances justified the officers' no-knock entry is a mixed question of law and fact that

---

**3.** Bynum does not contest the validity of the search warrant, only the manner of its execution.

**4.** Omniblast devices make a loud noise and release flashes of light. Officers use such distraction devices to facilitate surprise entries by disorienting occupants to promote officer safety when executing search warrants.

we review de novo. *See United States v. Hudson,* 100 F.3d 1409, 1417 (9th Cir. 1996).

## A

Bynum alleges that the manner in which NLVPD officers entered his apartment violated the knock and announce principles required by the Fourth Amendment, 18 U.S.C. § 3109, and Nevada state law, Nev.Rev.Stat. 179.055. We reject this contention and hold that the district court correctly ruled that sufficient exigent circumstances justified the no-knock entry of Bynum's apartment.

### 1

The Fourth Amendment and 18 U.S.C. § 3109[5] both mandate that police officers entering a dwelling pursuant to a search warrant announce their purpose and authority and either wait a reasonable amount of time or be refused admittance before forcibly entering the residence. *See Wilson v. Arkansas,* 514 U.S. 927, 933–35, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *United States v. Chavez–Miranda,* 306 F.3d 973, 980 (9th Cir.2002) (noting that officers may infer constructive refusal through silence after a significant amount of time under § 3109). This knock and announce requirement may be excused, however, by the presence of exigent circumstances. *Richards v. Wisconsin,* 520 U.S. 385, 394–95, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *United States v. Peterson,* 353 F.3d 1045, 1048 (9th Cir.2003). Exigent circumstances exist when officers have a "reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be danger-

ous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards,* 520 U.S. at 394, 117 S.Ct. 1416. "This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.* at 394–95, 117 S.Ct. 1416; *see also Wilson,* 514 U.S. at 935–36, 115 S.Ct. 1914. In a given case, any one factor analyzed under the totality of the circumstances may be sufficient to justify dispensing with the knock and announce requirement. *Peterson,* 353 F.3d at 1050 n. 5. Recently in *United States v. Banks,* —— U.S. ——, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003), the Supreme Court emphasized that "reasonableness [is] a function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of the circumstances in a given case[.]" *Id.* at 525, 124 S.Ct. 521.

As we reiterated in *United States v. Peterson,* exigent circumstances justifying no-knock entries under the Fourth Amendment are equally relevant in the § 3109 context. 353 F.3d at 1051 ("[T]he exigent circumstances we discuss with regard to the Fourth Amendment apply with equal force in the § 3109 context."), *citing United States v. Ramirez,* 523 U.S. 65, 73, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). The exigency exception to 18 U.S.C. § 3109 is measured by the same standard as applied to the Fourth Amendment reasonableness inquiry articulated in *Richards v. Wisconsin. See Ramirez,* 523 U.S. at 73, 118 S.Ct. 992. The analyses in these cases are, therefore, identical.

---

**5.** The "knock and announce" rule of 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Our assessment of the exigent circumstances present when NLVPD officers entered Bynum's apartment is guided by *Banks,* the Supreme Court's most recent decision on the knock and announce requirement. In *Banks,* Nevada police officers and FBI agents obtained a search warrant for Banks's apartment based on information that he was selling cocaine. The search produced weapons, narcotics, and other incriminating evidence. Banks moved to suppress, arguing that the officers' unreasonably short wait time preceding their forcible entry violated the knock and announce requirement under the Fourth Amendment and 18 U.S.C. § 3109. The district court denied his motion.

We reversed and, in an attempt to "aid[ ] in the resolution of the essential question whether the entry ... was reasonable under the circumstances," employed a novel approach that categorized knock and announce cases according to the type of intrusion. *United States v. Banks,* 282 F.3d 699, 704 (9th Cir.2002). The Supreme Court unanimously reversed, holding that under the facts known to the officers, the forcible entry of Banks's apartment satisfied § 3109 and was reasonable under the Fourth Amendment because officers entered "after a reasonable suspicion of exigency ripened." *Banks,* —— U.S. at ——, 124 S.Ct. at 529.

■ Traditionally, the knock and announce principle has operated, at least in part, as a notice requirement that provides individuals the opportunity to save their doors. *See id.* at 528, 124 S.Ct. 521; *Wilson,* 514 U.S. at 935–36, 115 S.Ct. 1914. However, the *Banks* Court made it clear that "[o]nce the exigency ... mature[s] ... the officers [are] not bound to learn anything more or wait any longer before going in, even though their entry entail[s] some harm to the building." *Banks,* —— U.S. at ——, 124 S.Ct. at 527. Further-

more, a judicial determination that exigent circumstances are present does not vary according to the officers' manner of entry. "[P]olice in exigent circumstances may damage premises so far as necessary for a no-knock entrance without demonstrating the suspected risk in any more detail than the law demands for an unannounced intrusion simply by lifting the latch." *Id.* at 525, 124 S.Ct. 521. The Court noted that"[s]ince most people keep their doors locked, entering without knocking will normally do some damage, a circumstance too common to require a heightened justification when a reasonable suspicion of exigency already justifies an unwarned entry." *Id.; accord Ramirez,* 523 U.S. at 70–71, 118 S.Ct. 992 ("Whether such a 'reasonable suspicion' exists depends in no way on whether police must destroy property in order to enter.").

We recently addressed a no-knock entry in *Peterson.* In that case, police had credible information that Peterson's house contained explosives and that Peterson had claimed a readiness and willingness "to blow shit up ... at any time." *Peterson,* 353 F.3d at 1049. We held that this created exigent circumstances sufficient to justify a no-knock entry, noting that "[t]his particularized fear of the potential for danger provided further justification for the SWAT team's no-knock entry." *Id.* at 1050.

■ As in *Peterson,* the NLVPD officers entering Bynum's apartment had a "particularized fear of the potential for danger." Specifically, officers knew that Bynum had at least one readily accessible firearm. Furthermore, given Bynum's strange conduct during the most recent drug transaction, officers reasonably suspected that he might become violent. The officers' concerns were not based on generalizations or stereotypes of drug dealers or narcotics investigations, but rather on

particularized, articulable, and reliable information. *Cf. United States v. Granville*, 222 F.3d 1214, 1219 (9th Cir.2000) (rejecting concerns applicable to the narcotics trade in general as justification for dispensing with the knock and announce requirement). Bynum conducted two face-to-face transactions with police agents, and, on both of these occasions, he actively displayed a firearm. During the final drug sale conducted by undercover Detective Pearson less than seven hours prior to the execution of the search warrant, Bynum exhibited abnormal and unpredictable behavior—specifically, answering the door wearing only a pair of socks—while wielding a chambered semi-automatic pistol in a threatening and intimidating manner.

In addition, the disposable nature of drugs contributes to a finding of exigent circumstances and supports the reasonableness of dispensing with a formal knock and announce. As we said in *Peterson*, drugs are the "quintessential disposable contraband." 353 F.3d at 1050. Justice Souter, writing for the Court in *Banks*, recognized that "the opportunity to get rid of cocaine, which a prudent dealer will keep near a commode or kitchen sink," is highly relevant to the reasonableness calculus. —— U.S. at —— – ——, 124 S.Ct. at 527–28 (noting that "[p]olice seeking a stolen piano may be able to spend more time to make sure they really need the battering ram"). Because NLVPD officers possessed a reasonable suspicion that Bynum might dispose of the small rocks of crack cocaine upon becoming aware of their presence, the no-knock entry of Bynum's apartment was justified in part by the need to prevent destruction of evidence.[6]

Although our decision that the entry was lawful primarily hinges on the officers' knowledge that Bynum was armed, we stress that our holding does not depart from the principle explicitly recognized by other jurisdictions that the presence of a gun, standing alone, is insufficient to justify noncompliance with the knock and announce rule. *See, e.g., United States v. Marts*, 986 F.2d 1216, 1218 (8th Cir.1993) ("The reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient."). There is a clear distinction between a scenario where an armed suspect poses a perceived threat and one where a firearm is merely known to be present in a residence. To lawfully dispense with the knock and announce requirement, the government must demonstrate that the presence of firearms raised a legitimate concern for officer safety. *Compare United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir.1990) (noting that the suspect was involved in the "trafficking [of] narcotics, was a felon in the possession of an array of firearms, and habitually wore a bulletproof vest"), *with United States v. Moore*, 91 F.3d 96, 98 (10th Cir.1996) ("The mere statement that firearms are present, standing alone, is insufficient."); *see also United States v. Stowe*, 100 F.3d 494, 499 (7th Cir.1996) ("Guns *and* drugs together distinguish the millions of homes where guns are present from those housing potentially dangerous drug dealers—an important narrowing factor.") (emphasis in origininal).

In other words, our holding in this case merely confirms the proposition that the

---

**6.** Notwithstanding Bynum's protestations to the contrary, it is inconsequential that officers did not find narcotics in their search. The relevant inquiry is only what the officers had reason to believe at the time of the warrant's execution. *See United States v. Ramirez*, 523 U.S. 65, 71 n. 2, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998). Bynum does not challenge the existence of probable cause sufficient to issue the search warrant.

presence of a firearm coupled with evidence that a suspect is willing and able to use the weapon will often justify noncompliance with the knock and announce requirement. *See, e.g., Perez,* 67 F.3d 1371, 1384 (9th Cir.1995) (where the suspect had threatened to "go down shooting") *withdrawn in part,* 116 F.3d 840 (1997). Bynum's unusual and threatening behavior with his pistol distinguishes this case from those where officers reasonably suspect only the presence of a firearm in the targeted residence.

Furthermore, the fact that NLVPD officers carried out a predetermined no-knock entry plan [7] is of no consequence and changes neither our analysis nor our conclusion. The defendant in *Peterson* raised an identical concern, questioning the propriety of a preconceived plan to enter without knocking and announcing. Relying on *Banks,* we rejected this attempt to shift the focus of the exigency inquiry to the preformulated strategic decisions of law enforcement, rather than the circumstances confronting officers "at the time they entered." *Peterson,* 353 F.3d at 1050 ("The lawfulness of the team's original plan is not relevant to our consideration; our role is to evaluate the events as they actually transpired."), *quoting Richards,* 520 U.S. at 395, 117 S.Ct. 1416. Because exigent circumstances existed at the moment NLVPD officers approached the door of Bynum's apartment, the no-knock entry was lawful, notwithstanding the fact that their noncompliance with the knock and announce rule was preconceived. The *Banks* decision dispelled any doubt on this point, stating:"[T]here is no reason to treat a post-knock exigency differently from the no-knock counterpart." —— U.S. at —— ——, ——, 124 S.Ct. at 527–28, 529 (noting that exigency qualifies "the requirement of

refusal after notice, just as it qualifies the obligation to announce in the first place").

In sum, the totality of the circumstances supports a conclusion that the no-knock entry of Bynum's apartment violated neither 18 U.S.C. § 3109 nor the Fourth Amendment. The NLVPD officers knew that Bynum had a loaded handgun and that he sold drugs from his residence. Officers testified that they considered the layout of the apartment complex, the dense population of the premises, and the apartment's proximity to a school. Nonetheless, the manner in which Bynum brandished his firearm at the most recent undercover buy only hours before the warrant's execution tips the balance in favor of upholding the district court's finding of exigent circumstances. Bynum's irregular and threatening behavior was sufficient for officers to reasonably believe that he posed a heightened risk to their safety should they knock first and announce their identity before attempting entry. We therefore affirm the district court's denial of Bynum's motion to suppress.

**2**

■ Bynum also argues that the officers' entry violated the Nevada state knock and announce requirement. *See* Nev.Rev.Stat. 179.055. He insists that the decisions of state officers acting under the authority of a state warrant must be adjudged under Nevada state law, which he further claims is more strict than its federal counterpart. This argument fails for two reasons. First, because this is a prosecution brought in federal court for violation of federal criminal law, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), federal law controls on the admissibility of this evidence. *See United States v. Chavez–Vernaza,* 844

---

7. It is undisputed that Detective Perez, when formulating the entry plan, had no intention of complying with the formal knock and announce rule.

F.2d 1368, 1374 (9th Cir.1987). "[E]vidence seized in compliance with federal law is admissible without regard to state law." *Id.* (noting that "requiring federal district courts to look to state law when determining the admissibility of evidence ... would hamper the enforcement of valid federal law and undermine the policy favoring uniformity of federal evidentiary standards"); *see also United States v. Medina*, 181 F.3d 1078, 1081–82 (9th Cir. 1999). Second, contrary to Bynum's allegation, the federal and Nevada state knock and announce statutes are materially identical. *See United States v. Fox*, 790 F.Supp. 1487, 1497–98 (D.Nev.1992) (finding exigent circumstances to justify a no-knock entry under both federal and Nevada state law), *aff'd sub nom. United States v. Austin*, 8 F.3d 30 (9th Cir.1993).

**B**

 Bynum additionally asserts on appeal that the officers unlawfully seized the pistol and the semi-automatic shotgun—hidden in the couch and the closet, respectively—because neither was in "plain view." Before properly assessing the "plain view" doctrine, *see United States v. Wong*, 334 F.3d 831, 838 (9th Cir.2003) (citing *Horton v. California*, 496 U.S. 128, 136–37, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)), however, we must first determine whether Bynum waived his right to appeal this issue by failing to preserve it in his conditional plea agreement. *See United States v. Vences*, 169 F.3d 611, 613 (9th Cir.1999) ("It would overreach our jurisdiction to entertain an appeal when the plea agreement effectively deprived us of jurisdiction."). Whether Bynum has waived his right to appeal is a

question of law that we review de novo. *See United States v. Shimoda*, 334 F.3d 846, 848 (9th Cir.2003).

 We find that Bynum waived his right to raise this argument because it was neither expressly raised in the written motion to suppress nor preserved for appeal in the conditional plea agreement. *See* Fed.R.Crim.P. 11(a)(2); *Peterson*, 353 F.3d at 1051 (finding that a defendant waived his right to appeal a claim of excessive force during execution of a search warrant). Plea agreements are contractual in nature and measured in accordance with general principles of contract law. *See United States v. Franco–Lopez*, 312 F.3d 984, 989 (9th Cir.2002). We enforce the literal terms of plea agreements, but construe ambiguities in the defendant's favor. *Id.*

Bynum's motion to suppress challenged only the NLVPD officers' no-knock entry. He first raised the "plain view" argument as an afterthought at the November 4, 2002, suppression hearing, and even then only after the completion of witness testimony. The district court's order denied "the motion that was filed" and explicitly declined to rule on this ancillary "plain view" argument, which Bynum raised without notice to the government and without developing the record through questioning of witnesses.[8] Shortly thereafter, Bynum knowingly and voluntarily entered a plea agreement that unambiguously reserved the right to appeal *only* the district court's November 4, 2002, Order. Therefore, he validly waived his right to appeal all grounds not addressed in that order. *See Peterson*, 353 F.3d at 1051. Because we lack jurisdiction, we are precluded from considering the merits of Bynum's chal-

---

8. At the conclusion of the suppression hearing, the district court judge noted: "[The 'plain view'] argument had not been raised and therefore was not responded to. It re-

mains, potentially, a live issue ... and we'll have to develop it at the time of trial, but at this point the motion that was filed to suppress will be denied."

lenge to the seizure of the firearms under the "plain view" doctrine.

## III

The district court properly ruled that the no-knock entry of Bynum's apartment violated neither 18 U.S.C. § 3109 nor the Fourth Amendment. Under the totality of the circumstances, because exigent circumstances justified noncompliance with the knock and announce requirement, NLVPD officers acted appropriately and lawfully when executing this high-risk search warrant. We lack jurisdiction to entertain Bynum's claim that the firearms were seized in violation of the "plain view" doctrine. The district court's denial of the motion to suppress, and Bynum's conviction and sentence, are therefore

**AFFIRMED.**