**Rick J. MEJIA, Plaintiff—Appellant,**

v.

**CITY OF SACRAMENTO; Sacramento Police Department; Arturo Venegas, Sacramento Chief of Police; Susan Feenstra, Sergeant; County of Sacra-**

---

\*\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

mento; County of Sacramento Probation Department; Vern L. Speirs, Sacramento County Chief Probation Officer; P. Varossa, Sacramento Police Department Officer; J. Oliver, Sacramento Police Department Officer, ID 0383; L. Hinz; Sue Florence, Sacramento County Deputy Probation Officer; Patti McGowan, Sacramento County Deputy Probation Officer; Edward Horning, Sacramento County Deputy Probation Officer; K. Pendleton, Defendants—Appellees.

No. 04–15934.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 2006.

Decided April 19, 2006.

Randall L. Wiens, Esq., Sacramento, CA, for Plaintiff–Appellant.

Jonathan B. Paul, Esq., Law Offices Of Moreno & Rivera, Steven T. Johns, Esq., James F. Wilson, Esq., Sacramento City Attorney's Office, Jesse M. Rivera, Esq., Moreno & Rivera, Sacramento, CA, for Defendants–Appellees.

Before: HALL, SILVERMAN, and GRABER, Circuit Judges.

MEMORANDUM *

Plaintiff Rick J. Mejia appeals the district court's grant of summary judgment in favor of Defendants in his 42 U.S.C. § 1983 action against the City and County of Sacramento and its employees.

*Probable Cause to Search*

■ Defendants had probable cause to believe that Marty resided at 6805 San Joaquin Street. Officer Hinz ran a PF–2 check, a check through the Department of Motor Vehicles, and an LOCS check. All of those inquiries pointed to the 6805 San Joaquin home as being Marty's residence. Mejia's (rather than Marty's) name appeared only once, on the PF–2 check, but was merely an indicator of police contact and as such did not outweigh the remaining evidence.

The officers' alleged disregard for police manual procedures concerning the confirmation of a suspect's residence—such as performing a walk-by or drive-by, running the license plates on the cars outside, or checking utility and property registration information—is of no moment. Probable cause can exist outside the boundaries of procedures not mandated by the Fourth Amendment.

*United States v. Harper*, 928 F.2d 894, 896 (9th Cir.1991), and *Watts v. County of Sacramento*, 256 F.3d 886, 889–91 (9th Cir. 2001), are distinguishable. The house was not known to belong to a third party, with mere incidental residence by the suspect, as was true in *Watts* and *Harper*.

Mejia also argues that the information supporting the search was too stale. We disagree. In the context of residence in one's home, which typically is not transitory, information gathered within a month of the search is not necessarily stale. *Motley*

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

*v. Parks,* 432 F.3d 1072, 1080–81 (9th Cir. 2005) (en banc).

The officers also had probable cause to believe that Marty was "present at the time of entry into the home." *Watts,* 256 F.3d at 890. They understood 6805 San Joaquin not as a third party's home, where Marty incidentally resided, but rather as Marty's primary residence. They also saw two cars in the driveway during an appropriate time frame around the close of the workday. These facts together gave the officers probable cause to believe that Marty would be present.

*Knock–and–Announce*

■ The Fourth Amendment "mandate[s] that police officers entering a dwelling pursuant to a search warrant announce their purpose and authority and either wait a reasonable amount of time or be refused admittance before forcibly entering [a] residence." *United States v. Bynum,* 362 F.3d 574, 579 (9th Cir.2004). Here, Defendants knocked; in fact, Mejia admits that he got up to answer the door in response to the knock. Mejia does contest, however, whether Defendants announced their identity as law enforcement before entering.

The district court ruled that "the undisputed facts reveal Hinz knocked on Mejia's door three times and yelled 'Sacramento Police Department, probation search.'" By so ruling, the district court improperly construed facts in favor of the moving parties, Defendants. Mejia contests whether Defendants announced their identity and consistently has stated that the first words he heard from any defendant concerned the whereabouts of A1 Marty. Indeed, Defendants' counsel conceded at oral argument that there are genuine issues of material fact as to whether Defendants announced their identity prior to entry. There existed no exigent circumstances justifying an unannounced or contemporaneously-announced entrance by police. *Cf. id.* (citing *Richards v. Wisconsin,* 520 U.S. 385, 394–95, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)). Accordingly, summary judgment was improperly granted with respect to Mejia's claimed knock-and-announce violation.

*Excessive Force, False Arrest, and False Imprisonment*

■ Excessive force is "force that was not 'objectively reasonable' in light of the facts and circumstances confronting the officer." *Robinson v. Solano County,* 278 F.3d 1007, 1013 (9th Cir.2002) (en banc). It is objectively reasonable in contexts such as this to detain an individual for his own safety, or so that the police can sweep the area for a suspect, unencumbered. The exigencies in play here, as properly noted by the district court, were: 1) a potential for armed conflict with Marty, who was known to have owned a substantial number of firearms in the past; 2) a risk of harm to the officers by virtue of the "home turf" advantage inherent in a home entry; and 3) uncertainty about Mejia's relationship with Marty.

The distinction between a misdemeanant who shot a neighbor's pet, as in *Robinson,* and a felon with a potential arsenal, as in this case, is significant. For the same reasons, Defendants' handcuffing and detention of Mejia, in addition to their pointing weapons at him, were objectively reasonable under the Fourth Amendment.

*Qualified Immunity*

■ First, with respect to the alleged noncompliance with the knock-and-announce rule, Mejia has presented adequate claims for a constitutional violation as a matter of law. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir.2002). Second, with respect to whether the law at the time of the offense was clearly established, the law relating to knock-and-announce was clear: The general principle of knock-and-an-

nounce had long been part of American law, and the exact contours had been clarified by the Supreme Court in *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). *See also Saucier*, 533 U.S. at 201, 121 S.Ct. 2151; *Sorrels*, 290 F.3d at 969. Finally, if plaintiff's claims are credited at trial, defendants are not entitled to qualified immunity on the knock-and-announce violation, because it would have been clear to a reasonable officer that the alleged flouting of the knock-and-announce rule was unlawful in the situation confronted. *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151; *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001).

*Pattern and Practice Claims*

 Because no supervisory liability exists if no constitutional harm has been done, Mejia can bring supervisory claims relating only to his viable knock-and-announce claim. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam).

Nonetheless, we reject Mejia's claims that there exists a pattern and practice of constitutional violations among the municipality's employees and agents. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead of presenting detailed evidence with respect to a municipal or supervisory policy and custom of lack of announcement, Mejia relies on *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir.1997), *as amended*, 137 F.3d 1372 (9th Cir.1998). He argues that the lack of apology or disciplinary review of the officers that broke into his home, without more, shows that there is a tacit upper-supervisory approval of, or at least deliberate indifference to, their behavior. *See, e.g.*, 132 F.3d at 520.

This bare reliance on *Henry* is misplaced; Mejia rests his entire supervisory liability theory on one leg of a broader analysis. In *Henry*, the plaintiff did not just present evidence of post-event deliberate indifference. He also presented several declarations of others' similar experiences; significant evidence of bad intent by the state actors who violated his rights; and continued threats throughout his ordeal. *Id.* at 520–21. Even construing the facts liberally for Mejia, he does not meet the *Henry* standard for expanding liability.

*State Law Claims*

As the district court properly noted, the exercise of supplemental jurisdiction is discretionary. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174–75 (9th Cir.2002). Because we remand one of Mejia's federal claims, we also remand the question of whether the district court should exercise supplemental jurisdiction.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.