# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

NEAL MADDOX,
        *Defendant-Appellee.*

No. 09-30284

D.C. No.
2:08-cr-00159-
RHW-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Robert H. Whaley, Senior District Judge, Presiding

Argued and Submitted
April 6, 2010—Seattle, Washington

Filed: August 12, 2010

Before: Michael Daly Hawkins, Carlos F. Lucero,* and
N. Randy Smith, Circuit Judges.

Opinion by Judge Hawkins;
Dissent by Judge N.R. Smith

*The Honorable Carlos F. Lucero, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation.

11435

## COUNSEL

Aine Ahmed, Office of the United States Attorney, Spokane, Washington, for the plaintiff-appellant.

Matthew Campbell, Office of the Federal Defenders of Eastern Washington and Idaho, Spokane, Washington, for the defendant-appellee.

**OPINION**

HAWKINS, Circuit Judge:

The government appeals the suppression of evidence found inside closed containers—themselves inside a motor vehicle stopped for a traffic violation—after the driver was handcuffed and securely placed in the rear of the arresting officer's patrol car. We affirm.

*FACTS*

Officer Scott Bonney had pulled over to the side of the road to finish writing a police report, when he saw Neal Maddox's ("Maddox") Chevy truck enter the intersection. Maddox stopped abruptly in the intersection, then immediately proceeded in reverse. As he was moving in reverse towards the stop sign, Maddox nearly collided with a small blue car going westbound in the intersection. He made a three-point turn, blocking traffic, turned around, and accelerated. Maddox slowed once the officer activated his overhead lights, and stopped at the side of the road.

When Officer Bonney exited his patrol car, Maddox exited his vehicle and began yelling at the officer. Officer Bonney instructed Maddox to sit in the driver's seat and remain still, approached the vehicle, and told Maddox he had stopped him for driving recklessly. Maddox identified himself, but was unable to produce a driver's license. When asked whether the vehicle belonged to him, Maddox admitted ownership, noting his friend gave him the truck a few weeks before. He added he had yet to register the truck, and had no bill of sale. Officer Bonney noticed the vehicle's tags were expired, and the temporary sticker in the rear window was not only a photocopy, but also valid for longer than was normal for a temporary sticker (31 rather than 30 days). A computer check revealed that Maddox's license had been suspended. When Maddox ignored the officer's request to step outside the vehicle, the

officer took away Maddox's key chain and cell phone, tossing them on the front seat of Maddox's vehicle. Officer Bonney placed Maddox under arrest, handcuffed him, and escorted him to the patrol car. He then searched Maddox's person and found $358 in cash inside Maddox's pants pockets, putting Maddox in the back of the patrol car after the search. It is undisputed that, at this point, Maddox posed no threat to officer safety and there was no danger of evidence destruction.

Officer Bonney then returned to Maddox's vehicle, reached inside, and retrieved the key chain and cell phone. Hanging on the key chain was a metal vial with a screw top. Removing the top and the vial's contents, the officer discovered a substance he believed to be methamphetamine. Entering the interior of vehicle, the officer found a closed computer case which he opened, and discovered a handgun and still more of the substance he had found in the key chain vial.

Following a hearing, the district court determined that neither probable cause, exigent circumstance, nor the incidents of Maddox's arrest or impoundment of his vehicle justified a warrantless search of the interior of Maddox's vehicle, and ordered suppression of the items found there. This interlocutory appeal followed.[1]

## STANDARD OF REVIEW

A district court's grant or denial of a motion to suppress is reviewed de novo. *United States v. Orman*, 486 F.3d 1170, 1173 (9th Cir. 2007); *United States v. Bynum*, 362 F.3d 574, 578 (9th Cir. 2004); *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992).

---

[1]We deny the Government's motion to file a supplemental record of an alleged misstatement made by a defense witness at the suppression hearing; this evidence was never presented to the district court, and was not a part of the district court record. We grant Maddox's motion to strike the portion of the Government's reply brief referring to such testimony.

*DISCUSSION*

*The Key Chain*

The Government argues the search of Maddox's key chain was proper as incident to lawful arrest.

**[1]** A search incident to lawful arrest is one of the "few specifically established and well-delineated exceptions" to the warrant requirement of the Fourth Amendment, *see Katz v. United States*, 389 U.S. 347, 357 (1967), and is conducted for the twin purposes of finding weapons the arrestee might use, or evidence the arrestee might conceal or destroy. *Chimel v. California*, 395 U.S. 752, 762-63 (1969). The determination of the validity of a search incident to arrest in this circuit is a two-fold inquiry: (1) was the searched item "within the arrestee's immediate control when he was arrested"; (2) did "events occurring after the arrest but before the search ma[k]e the search unreasonable"? U*nited States v. Turner*, 926 F.2d 883, 887 (9th Cir. 1990).**[2]**

---

**[2]** The dissent relies on *United States v. Robinson*, 414 U.S. 218, 235 (1973), convinced Officer Bonney conducted a valid search incident to arrest. Dissenting Op., at 11447-48. *Robinson*, however, is easily distinguishable from the case before us; the search of Maddox's key chain was not a valid search incident to arrest as the key chain was not on Maddox's person at the time of the search. After pulling over Robinson's vehicle, the officer was "face-to-face" with Robinson when he conducted a patdown of the defendant, during which he "felt an object in the left breast pocket of the heavy coat respondent was wearing," reached into Robinson's pocket and pulled out the object (a crumpled cigarette package), and then opened the package, finding 14 gelatin capsules of heroin. *Id.* at 224. The officer then "continued his search of [Robinson] to completion, feeling around his waist and trouser legs, and examining the remaining pockets." *Id.* Here, Officer Bonney took the keys, and placed them on the seat of Maddox's car; he did not open the key chain during a patdown search of Maddox, but after Maddox was secure in the patrol car and when the keys were no longer on his person. The Court's admonition in *Robinson* that "the authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not

**[2]** Contrary to the dissent's opening description, this was *not* a search of Maddox's person incident to arrest. Maddox's person was handcuffed in the back of the squad car, incapable of either destroying evidence or presenting any threat to the arresting officer. While the key chain was within Maddox's immediate control while he was arrested, subsequent events—namely Officer Bonney's handcuffing of Maddox and placing Maddox in the back of the patrol car—rendered the search unreasonable. In *Turner*, we found valid the search of baggies found *after* the defendant was handcuffed and taken into the next room because of a legitimate concern for the officers' safety: "they had already discovered a concealed weapon beneath the bedding." *Id*. at 888; *accord United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996) (search of bedroom valid search incident to arrest even after defendant had been arrested and removed from the room, where "[w]hen Hudson was called out of his bedroom and arrested, one of the arresting officers noticed a rifle case near his feet"). No such weapon or threat was found here, and Maddox's demeanor, as the dissent argues, *see* Dissenting Op., at 11445 n.1, did not provide such legitimate concern for Officer Bonney's safety, as after initially yelling, Maddox subsequently cooperated with the officer and the arrest. Mere temporal or spatial proximity of the search to the arrest does not justify a search; some threat or exigency must be present to justify the delay. *See United States v. Chadwick*, 433 U.S. 1, 15 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565, 571 (1991) ("warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the search is remote in time or place from the arrest, or no exigency exists. Once law enforcement

---

depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect," *id*. at 253, cannot possibly have meant to encompass a situation such as Maddox's, where he was handcuffed and locked securely in the back of a patrol car.

officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.") (internal quotations and citations omitted). With Maddox handcuffed in the backseat of the patrol car, no possibility of Maddox concealing or destroying the key chain and the items contained therein, and no sighting of weapons or other such threats, Officer Bonney's search of Maddox's key chain was not a valid search incident to arrest.[3]

*The Laptop Bag*

The Government contends the officer's seizure of the laptop bag was the result of a valid inventory search.[4]

---

[3]Maddox did not have a diminished privacy interest in his key chain container merely because he "chose to attach the searched container to his keys." *See* Dissenting Op., at 11450 n.4. The Supreme Court has "rejected the proposition that 'the nature of a container may diminish the constitutional protection to which it otherwise would be entitled.' " *United States v. Monclavo-Cruz*, 662 F.2d 1285, 1287 (9th Cir. 1981) (citing *Robbins v. California*, 453 U.S. 420, 424-25 (1981) (plurality). "[S]uch a distinction 'has no basis in the language or meaning of the Fourth Amendment' because that 'Amendment protects people and their effects, and it protects those effects whether they are 'personal' or 'impersonal.' " *Id.* In recognizing an individual's privacy interest in a purse, we held "no one can sensibly be asked to distinguish the relative 'privacy interests' in a closed suitcase, briefcase, portfolio, duffle bag or box." *Id.* While the keys may very well be considered "what amounts to a tool," *see* Dissenting Op., at 11450 n.4, and while "any person wishing to drive his truck, move his truck, lock or unlock his truck [may be] required to use a set of keys," *see id.*, such use of the keys would not require a person to open the container *attached* to those keys. An individual therefore has a privacy interest in such a container, which could contain a wide range of medications or other personal items.

[4]The Government does not contest that without a valid seizure of the key chain, the officer lacked probable cause to search the rest of the vehicle, and therefore did not have probable cause to seize the laptop bag. *See United States v. Barajas-Avalos*, 377 F.3d 1040, 1054 (9th Cir. 2004) (citing *United States v. Wanless*, 882 F.2d 1459, 1465 (9th Cir. 1989)); *United States v. DiCesare*, 765 F.2d 890, 899, *amended by* 777 F.2d 543 (9th Cir. 1985).

**[3]** Vehicular inventory searches must be conducted "in accordance with the standard procedures of the Washington State Patrol" in order for procured evidence to be admitted in federal court. *United States v. Wanless*, 882 F.2d 1459, 1463 (9th Cir. 1989). Once a vehicle is impounded, police may conduct an inventory search. *Id.* Police may impound a vehicle in Washington state:

> if the officer has probable cause to believe that it was stolen or used in the commission of a felony; . . . as part of the police 'community caretaking function' . . . [provided] neither the defendant nor his spouse or friends are available to move the vehicle; and . . . if the driver has committed one of the traffic offenses for which the legislature has specifically authorized impoundment.[5]

*State v. Williams*, 689 P.2d 1065, 1071-72 (Wash. 1984). With the verification of the vehicle identification number and plates, and Maddox's own assertion of ownership, any suspicion the vehicle was stolen was but a "mere suspicion." *See State v. Houser*, 622 P.2d 1218, 1222-23 (Wash. 1980)[6].

---

[5]Here, neither the offense of reckless driving, nor the offense of driving while license suspended (3rd degree), specifically authorize impoundment. *See* Rev. Code Wash. §§ 46.61.500; 46.20.342.

[6]The court in *Houser* found the detective "harbored a mere suspicion that the car was stolen, and that it was this suspicion which caused the officer to impound the car." *Houser*, 622 P.2d at 1224. The officer testified that he was not sure the vehicle was stolen, made no further inquiry into the defendant's right to possession of the car, did not inquire as to the false identity used by the defendant, did not ask why the defendant was in the area, and did not inquire why the defendant was using a car registered to another individual. *Id.* He also did not run a check of the VIN to determine if the car was stolen. *Id.* Because "a mere suspicion that a vehicle is stolen does not rise to the level of probable cause for the purpose of justifying an intrusion of Fourth Amendment rights," the court found that "the State ha[d] not sustained its burden of showing the impoundment was based on probable cause that the car was stolen." *Id.*

Moreover, the vehicle here was impounded for reasons other than to carry out the community caretaking functions of the police: it was not abandoned, impeding traffic, or threatening public safety or convenience. *See id*. at 1224. Finally, because Maddox offered to have his friend move the vehicle, the officer did not sufficiently consider alternatives before impounding Maddox's truck. The officer's impoundment of Maddox's vehicle violated Washington Law, and, therefore, did not qualify as a valid inventory search in accordance with the Fourth Amendment.

**AFFIRMED.**

---

N.R. SMITH, Circuit Judge, dissenting:

The undisputed facts of this case establish that Officer Bonney's search of Maddox's key-chain container was a search of an arrestee's person incident to a lawful custodial arrest—a search that needs no warrant to be valid under established Fourth Amendment law. *See United States v. Robinson*, 414 U.S. 218, 236 (1973). I therefore dissent.

In review of the pertinent facts in this case, Maddox does not dispute that Officer Bonney had probable cause to arrest him. He does not dispute that Officer Bonney first took possession of Maddox's keys when Officer Bonney removed

---

Here, not only did Officer Bonney run the VIN and find the car was not stolen, but he also asked Maddox whether the truck belonged to him. Maddox responded that he owned the truck but it was given to him by a friend, and he did not have time to register it. With the verification of the VIN and plates, and Maddox's own assertion, Officer Bonney had even less reason to believe the vehicle was stolen than the officer in *Houser*; any suspicion the vehicle was stolen, therefore, was only a "mere suspicion" and did not rise to the level of reasonable cause required under Washington state law. *See Houser*, 622 P.2d at 1223.

those keys from Maddox's hand as Officer Bonney was attempting to handcuff Maddox. He does not dispute Officer Bonney's description of Maddox's behavior upon being stopped; behavior that is best described as confrontational and aggressive.[1] Finally, Maddox does not dispute that, if we find the search of the key-chain container valid, the discovery of methamphetamine in that key-chain container justifies a warrantless search of Maddox's truck under the "automobile exception." *See Carroll v. United States*, 267 U.S. 132, 160-62 (1925). Having found undisputed facts establishing the propriety of Officer Bonney's search of the key-chain container, this panel need look no further for justification. *See Gustafson v. Florida*, 414 U.S. 260, 263-64 (1973) (holding that the lawful arrest renders the search of the arrestee's person "reasonable" under the Fourth Amendment).

## FACTS

Officer Bonney first noticed Maddox while Officer Bonney was parked on the west side of Barker Road in Spokane, Washington (Barker Road runs north-south), typing up some notes on a noise complaint call in the area. Officer Bonney's vehicle was facing south and located just north of an intersection where Buckeye Avenue (Buckeye Avenue runs east-west) ends at Barker Road (forming a T-intersection). From that vantage point, Officer Bonney observed Maddox driving westward down Buckeye Avenue. As Officer Bonney watched, Maddox drove past a stop sign and then abruptly stopped (Bonney suspected that the truck's driver was about to run the stop sign before seeing the police car), coming to a complete stop in the intersection, partially blocking north-

---

[1]Although Maddox's behavior is not dispositive when determining the validity of the search, I do find it particularly relevant to understanding the nature of the stop. In particular, Maddox's confrontational and aggressive behavior forced a situation where Officer Bonney's search of Maddox's effects, while contemporaneous to the arrest, was not performed until Maddox was secured.

bound traffic on Barker Road. At this point, Officer Bonney pulled out to catch up with the truck. The truck then immediately reversed, almost backing into a small car traveling west behind the truck. The truck made a quick 3-point turn—blocking traffic on Buckeye Avenue in both directions—and quickly accelerated eastward. When Officer Bonney caught up, the truck slowed down to a crawl, and, at that point, Officer Bonney pulled the truck over.

When Officer Bonney exited his patrol car, Maddox also got out and began yelling at him—including yelling "Why the fuck you stopping me?" as well as other profanities. Officer Bonney informed Maddox that he had stopped Maddox for reckless driving and asked to see Maddox's driver's license. Maddox told him that he did not have a driver's license. Officer Bonney then asked Maddox to whom the truck belonged, to which Maddox replied that a friend "gave" him the truck a few weeks earlier.[2] Maddox admitted that he had not registered the truck and that he had no bill of sale. Officer Bonney noticed that tabs on the truck were expired and that a temporary sticker in the rear window of the truck appeared to be invalid (Officer Bonney observed that the sticker was a photocopy—rather than the original—and that the dates on the sticker would have made the 30-day temporary sticker valid for 31-days even if it had been issued the day of the stop).

When Officer Bonney ran a computer check on Maddox, he discovered that Maddox's license had been suspended. He then walked back to the truck to place Maddox under arrest for reckless driving and driving while his license was suspended. Just before handcuffing Maddox, Officer Bonney

---

[2]The majority opinion characterizes Maddox's statement that he owned the car as an "admission" of ownership. However, the record reflects that from Officer Bonney's perspective, rather than viewing Maddox's statement that a friend gave him the car as an "admi[ssion] of ownership," it raised concerns as to the vehicle's true owner.

removed a cell phone and key-chain from Maddox's hands and set them on the driver's seat. After walking Maddox back to the patrol car, Officer Bonney continued his search of Maddox's person, finding $358 in Maddox's pants pockets. Officer Bonney then secured Maddox in the back of the patrol car. After securing Maddox, Officer Bonney went to retrieve the items he had seized incident to arrest, which included the key-chain. On the key-chain was a blue cylindrical container with a screw top. Upon removing that top, Officer Bonney found a white crystallized substance he recognized as methamphetamine.

## ANALYSIS

An officer's authority to search an arrestee's person incident to arrest arises from the existence of a lawful custodial arrest. *Robinson*, 414 U.S. at 236. No one disputes the lawful custodial arrest here. We must only decide whether Officer Bonney's search of the key chain container was too remote in time or place, to be justified as a search of an arrestee's person incident to arrest. The majority holds this search invalid, finding that while the key chain container was within Maddox's immediate control at the time of the arrest, events subsequent to the arrest but prior to the search rendered the search "unreasonable." *Maj. Op.* 11441. The majority bases its finding of unreasonableness on the fact that, at the time Officer Bonney returned to further investigate the items seized in his search incident to arrest, "Maddox's person was handcuffed in the back of the squad car, incapable of either destroying evidence or presenting any threat to the arresting officer." *Maj. Op.* 11441. However, the majority cannot cite any authority for requiring such an instantaneous assessment of those items seized upon a search incident to arrest nor can it cite authority for such a case-specific review. Instead, contrary to the majority's view, the Supreme Court has expressly instructed that we not engage in a "case-by-case adjudication" "of the reasons supporting the authority for a search of the person incident to a lawful arrest," but that the "how and

where" of the search should generally be left within the judgment of the police officer. *Robinson*, 414 U.S. at 235.[3] Here, there exist no unusual circumstances requiring this panel to step outside the general rule set forth in *Robinson* and question Officer Bonney's judgment. Finally, the very case upon which the majority primarily relies, *United States v. Turner*, 926 F.2d 883 (9th Cir. 1990), contradicts the majority view. There, we held that a search, conducted when the arrestee's person was handcuffed and secured in a different room than that being searched, was still a valid search of an arrestee's person incident to arrest.

## 1.  Search of an Arrestee's Person and the *Chimel* Justifications

"A police officer's determination as to how and where to

---

[3]The majority seeks to avoid the Supreme Court's clear instruction in *Robinson*, finding it "easily distinguishable" because of the difference in facts between Robinson and the case here. However, *Robinson* cannot be so easily cast aside, for two reasons. (1) In *Robinson*, the Supreme Court sought to determine the validity of a search of an arrestee's person incident to arrest; here, we seek to answer that same issue. Further, *Robinson* does not limit its holding to its facts and, as the Supreme Court often does, the opinion explains the genesis, development, justifications, and limitations of a search of an arrestee's person incident to arrest. That guidance simply cannot be ignored because of minor factual differences. (2) In this common law system, the facts here and those in the binding precedent of *Robinson* are simply not that different. In *Robinson*, the defendant was arrested for driving without a permit; Maddox was arrested for driving without a permit. In *Robinson*, the drugs were found inside of a container (a cigarette pack) taken from the defendant's person during the search; here, the drugs were found inside of a container (key chain container) taken from Maddox's person during the search. The difference exists in the timing of when the arresting officer further inspected that seized container. However, in the *Robinson* opinion, there exists no evidence that the defendant acted in an aggressive or hostile manner; here, there exists uncontroverted evidence that Maddox acted in an aggressive and hostile manner while being arrested. With such similarity, the Supreme Court's instruction in *Robinson* remains, at very least, highly instructive, and certainly should not be dismissed as "easily distinguishable."

search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search." *Robinson*, 414 U.S. at 235. Thus, the Supreme Court instructed that an appellate panel's review should not focus upon the "how and where" of the search. Nevertheless, both the Supreme Court and this Circuit have decided cases where they found the search too remote in time or place to be described as a search incident to arrest. *See, e.g.*, *United States v. Chadwick*, 433 U.S. 1, 4-5, 15 (1977) (finding the search of a double-locked luggage chest that was not searched until an hour and a half after the arrests, having been transported to a federal building, was not a proper search incident to arrest), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *Monclavo-Cruz*, 662 F.2d at 1287 (finding warrantless search invalid where officers seized a purse incident to arrest, transported the purse to Immigration Office, and searched the purse about an hour after the arrest). Because *Chadwick* and *Monclavo-Cruz* present fact patterns where a search incident to arrest was found improper, I contrast the facts here with those cases. While the facts surrounding the searches in *Chadwick* and *Monclavo-Cruz* were much more extreme in time and location than the search here, the courts looked to (1) the time of the search relative to the arrest, and (2) the location of the search.

In sum, a reviewing panel must respect the inherent reasonableness of the officer's search and the *ad hoc* nature in which that search is conducted, by declining to engage in a fact-based review of the "how and where" of the search; yet a panel must guard against expanding presumed reasonableness to searches that clearly are not "incident to arrest."

Looking to the manner, location, and time of Officer Bonney's search of the key-chain container, the majority errs in finding the search should be included among those extreme cases where the search was found unreasonable. Officer Bon-

ney took the key-chain container directly from Maddox's hand at the exact time that he was arresting Maddox. He momentarily set the container in almost the exact location of the arrest—in order to handcuff Maddox. He then secured Maddox in the patrol car and *directly* returned to retrieve and assess the evidence found on Maddox's person. At this point, Officer Bonney searched the container. Maddox presents no evidence that the arrest was protracted or that Officer Bonney did not return directly to the items seized during the search incident to arrest. Maddox provides no evidence that Officer Bonney moved the evidence away from the scene of arrest and seizure before conducting his search. Thus, the search occurred within a time of mere minutes and within an area of mere feet; far from the passage of hours or the transportation to another location that occurred in *Chadwick* and *Monclavo-Cruz*.

The majority also supports its view by arguing that the warrantless search of an arrestee's person is an exception to the Fourth Amendment's warrant requirement and, therefore, only valid if it can be justified either as an attempt to ensure police safety or preserve evidence. *Maj. Op.* 11440 (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969)). This argument fails because, as the Supreme Court has explained, the validity of a search incident to arrest does not rely upon satisfaction of those justifications.[4] First, although the search

---

[4]In making such argument, I do not concede that the facts cannot rely upon the twin justifications of officer safety and preservation of evidence. In fact, the search of the key chain container can be supported by both justifications. Although the nature of the container does not diminish Maddox's constitutional protections, *Monclavo-Cruz*, 662 F.2d at 1287, the fact that Maddox chose to attach the searched container to his keys supports the reasonableness of Officer Bonney's search. Here, the item searched (a small cylinder with a screw cap) was attached to what amounts to a tool: the keys to Maddox's vehicle. Any person wishing to drive his truck, move his truck, lock or unlock his truck is required to use a set of keys. Officer Bonney himself would be required to use that same set of keys if he wished to move or secure Maddox's truck upon arrest. I cannot

of an arrestee's person incident to arrest has been, at times, referred to as an "exception" to the Fourth Amendment's warrant requirement, the Supreme Court has made clear that the search is not so much an exception to the warrant requirement, as it is reasonable by its nature. *Gustafson*, 414 U.S. at 263-64. Second, *Chimel* never "purported to limit the traditional authority of the arresting officer to conduct a full search of the person of an arrestee incident to a lawful custodial arrest." *Id.* at 264; *see also Robinson*, 414 U.S. at 236 ("[I]t is the fact of custodial arrest which gives rise to the authority to search."). Therefore, the majority's reliance upon the necessity to demonstrate such justifications fails.

## 2. *United States v. Turner*

The majority relies upon *Turner*, where a search incident to arrest was found valid, in order to invalidate the search of Maddox. However, applying *Turner* to the facts here, it reinforces, rather than conflicts with, the Supreme Court's precedent in *Chadwick* and the Ninth Circuit case of *Monclavo-Cruz*. For these reasons, I find the majority's reliance upon *Turner* unconvincing.

*Turner* adopted a two-fold inquiry to aid a reviewing panel in determining whether a search was a valid search of an arrestee's person incident to arrest. *Turner*, 926 F.2d at 887. *Turner* requires a reviewing panel first determine whether the searched item was "within the arrestee's immediate control at the time he was arrested" and next determine whether the "events occurring after the arrest but before the search made the search unreasonable." *Id.* First, there can be no dispute

---

agree with the conclusion that the justifications of officer safety and destruction of evidence—upon which the majority so heavily relies—do not further support the search of a small unlocked container attached to a tool which Officer Bonney would either be forced to use himself or to give to another person.

here that the key chain container was "withing [Maddox's] immediate control at the time he was arrested." Neither party disputes that Maddox was arrested while at his car *and* that the keys were taken from Maddox's hand at the very moment of arrest. Second, there exist no extraordinary events occurring between the arrest and the search rendering Officer Bonney's further investigation of the seized item unreasonable.

A comparison of the facts in *Turner* also reveals the validity of Officer Bonney's search. In *Turner*, we found the search incident to arrest valid, where the officers did not search baggies, found on the bed where the defendant had been arrested, until after the defendant was cuffed and secured in another room. 926 F.2d at 886, 888.[5] Those baggies were found to contain cocaine base. *Id*. The *Turner* opinion does not explain whether the baggies searched were clear or opaque; it does not tell us how the baggies were closed, how they were searched or the tools necessary to open the baggies. *Id*. Instead, *Turner* provides a cursory conclusion that the search was valid, because the panel could not say that the officers' concerns for their own safety at the time of arrest "were unfounded." *Id*. at 888. As discussed above, I also cannot find Officer Bonney's actions unfounded given (1) the nature of Maddox's erratic driving, (2) his immediate and aggressive confrontational behavior, and (3) the suspicious circumstances surrounding the vehicle, combined with *Robinson*'s instruction that reviewing courts refrain from unnecessarily

---

[5]The majority parses the location of the defendant to the searched item in much greater detail than that found in *Turner*. In *Turner*, the baggies were discovered in the same bed where Turner was arrested (not in his pocket or in his hands), and were not searched until after he was removed from the room and secured. Yet, the majority does not challenge that the search was a valid search of an arrestee's *person* incident to arrest. Here, the key chain container was taken directly from Maddox's hand, but not searched until after he was removed from the area and secured in the patrol car. Yet, the majority states that, under such facts, the search could not possibly be described as a search of Maddox's person. *Maj. Op.* 11441-42.

second-guessing the officer's judgment regarding the necessary actions to protect his safety, *see* 414 U.S. at 235. Furthermore, before looking to the two-fold inquiry, the panel in *Turner* reiterated this Circuit's general principle for searches incident to arrest: "Such a search incident to arrest must be conducted at 'about the same time as the arrest.' " *Turner*, 926 F.2d at 887 (quoting *Untied States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir. 1987)). Here, Officer Bonney's search of the key-chain container satisfies this standard, as it was "about the same time as the arrest."

Lastly, here the majority invalidates a search where an officer, without the aid of other officers, deems it necessary to secure a hostile and confrontational arrestee before immediately returning to those items taken directly from the arrestee's hands during the arrest. Therefore, it seems unlikely that the majority, if presented with the facts of *Turner*, would find a search valid where a prepared team of officers arrested, secured, and moved the arrestee before searching the bed upon which he was found.

## CONCLUSION

The parties do not dispute that the arrest of Maddox was a lawful custodial arrest. The parties do not dispute that the item searched was taken from Maddox's hand at the exact moment he was arrested. The parties do not dispute that the item was not moved from the place of seizure and was searched within minutes of arrest. Therefore, I find that the search of Maddox's key-chain container was a lawful search of an arrestee's person incident to arrest. I dissent.